CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 17 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TONY ALLEN WRIGHT, | ) |
| | ) Civil Action No. 7:14CV00548 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Tony Allen Wright, was born on February 11, 1976, and eventually reached the tenth grade in school. Mr. Wright has been employed as a heavy equipment operator, construction laborer, meat cutter, and stocker in a retail department store. Apparently, he last worked on a sustained basis in 2006. On April 22, 2011, Mr. Wright filed applications for disability insurance benefits and supplemental security income benefits. Earlier applications for such benefits had proven unsuccessful. In filing his more recent claims, plaintiff alleged that he became disabled for all forms of substantial gainful employment on March 1, 2007, due to back

problems; shoulder, neck, and knee problems; fibromyalgia; post-traumatic stress disorder; extreme bi-polar disorder; schizophrenia; residuals of surgery for broken ankles; arthritis and bursitis; nerve damage in his back; deteriorating joints in the hip and thigh; and chronic obstructive pulmonary disease. Plaintiff now maintains that he has remained disabled to the present time. As to his application for disability insurance benefits, the record reveals that Mr. Wright met the insured status requirements of the Act through the first quarter of 2010, but not thereafter. See generally, 42 U.S.C. §§ 416(i) and 423(a). Consequently, Mr. Wright is entitled to disability insurance benefits only if he has established that he became disabled for all forms of substantial gainful employment on or before March 31, 2010. See generally, 42 U.S.C. §§ 423(a).

Mr. Wright's claims were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated March 27, 2013, the Administrative Law Judge also found that plaintiff is not disabled. The Law Judge ruled that Mr. Wright suffers from several severe impairments, including chronic back pain; polyarthropathy with probable degenerative disc disease of the hips; diastolic hypertension; attention deficit hyperactivity disorder; anxiety; personality disorder; depression; cannabis abuse; and alcohol dependence. (TR 172). Because of this combination of impairments, the Law Judge determined that plaintiff is disabled for all of his past relevant work roles. However, the Law Judge held that Mr. Wright retains sufficient functional capacity for a limited range of sedentary work activity. (TR 174). The Law Judge assessed plaintiff's residual functional capacity as follows:

2

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except the claimant can sit for a total of 6 hours, stand and/or walk for a total of 2 hours, and occasionally climb, balance, stoop, kneel, and crouch, but never crawl and no repetitive foot controls. The claimant should avoid heights, hazards, and fumes. Due to the claimant's mental impairments he is limited to 1 to 2 step job instructions.

(TR 174). Given such a residual functional capacity, and after considering Mr. Wright's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge found that plaintiff retains sufficient capacity to perform several specific sedentary work roles existing in significant number in the national economy. (TR 180-81). Accordingly, the Law Judge ultimately concluded that Mr. Wright is not disabled, and that he is not entitled to benefits under either federal program. See generally, 20 C.F.R. §§ 404.1520(g) and 416.920(g).

Mr. Wright appealed the Law Judge's decision to the Social Security Administration's Appeals Council. Shortly after he filed his appeal, plaintiff submitted a number of new medical reports documenting treatment for new physical symptoms, as well as for his long-standing psychiatric disorder. However, the Appeals Council eventually adopted the Law Judge's opinion as the final decision of the Commissioner. Having now exhausted all available administrative remedies, Mr. Wright has appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described

3

through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court must conclude that there is substantial evidence to support the Commissioner's denial of plaintiff's claim for disability insurance benefits. While plaintiff definitely suffered from a variety of musculoskeletal problems, especially in the lower back, during the period before the expiration of his insured status on March 31, 2010, the court believes that the Administrative Law Judge reasonably relied on consultative reports from Dr. William H. Humphries, Jr., an emergency medical specialist, and Dr. Marvin A. Gardner, Jr., a clinical psychologist, in concluding that Mr. Wright was not disabled prior to the time of these consultative studies in June of 2011. Although Dr. Humphries noted clinical findings of reduced motion in the back and hips, his report clearly supports a finding of residual functional capacity for at least sedentary exertional activity. Moreover, the court notes that a later MRI of the lumbar spine revealed moderate facet arthropathy without signs of stenosis or nerve root impingement.

As for Mr. Wright's psychiatric condition, following an examination on June 29, 2011, Dr. Gardner diagnosed adjustment disorder with mixed anxiety and depression; attention deficit/hyperactivity disorder; and personality disorder. Dr. Gardner assessed Mr. Wright's functional capacity as follows:

> The claimant is able to perform simple and repetitive tasks and maintain regular attendance in the workplace. He is able to perform work activities on a consistent basis. He is able to perform work activities without special or additional supervision. He is able to complete a normal workday or workweek without interruptions resulting from his psychiatric condition. The claimant was capable of

4

accepting all instructions given by this examiner and responding appropriately. The claimant is likely to have no more than a moderate work-related social impairment interaction with coworkers and with the general public. He is able to deal with the usual stressors encountered in competitive work.

(TR 470). The psychologist assessed plaintiff's GAF at 65.[1]

In short, the court believes that there is substantial evidence to support the Commissioner's determination that Mr. Wright was not disabled for all forms of work in June of 2011, when he was seen by both Dr. Humphries and Dr. Gardner. There is no reason to believe that plaintiff's physical, mental, and emotional problems were more severe at any time on or before March 31, 2010, the day on which plaintiff last enjoyed insured status. It follows that the Commissioner's final decision denying plaintiff's claim for disability insurance benefits must be affirmed.

Plaintiff's application for supplemental security income benefits presents different problems. It seems that, following the consultative studies, Mr. Wright's psychiatric condition deteriorated. Beginning on May 14, 2012, plaintiff was seen on a number of occasions by Tamara Baldwin, a mental health nurse practitioner. At the time of her first encounter with plaintiff, Ms. Baldwin diagnosed bi-polar disorder, severe with psychotic features. (TR 474). On June 11, 2012, Ms. Baldwin noted that plaintiff was suffering from severe depression, and that his anxiety, bi-polar disorder, and depression were all worsening. (TR 659). Mr. Wright was somewhat less depressed when seen on July 27, 2012. (TR 655). However, on August 27,

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A GAF score between 61 and 70 represents only some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, with some meaningful interpersonal relationships. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 47 (4th ed. text rev. 2000).

5

2012, Ms. Baldwin again found that plaintiff's symptoms were worsening. (TR 651). On February 25, 2013, Ms. Baldwin observed that Mr. Wright was suffering from panic attacks several times per week. (TR 668). At the time of the administrative hearing, the Administrative Law Judge agreed to hold the record open for an additional assessment from Ms. Baldwin. (TR 197-98, 220). Shortly after the hearing, Ms. Baldwin submitted a medical assessment of plaintiff's mental ability for work-related activities. Stated succinctly, Ms. Baldwin found that Mr. Wright experiences serious limitations in his ability to function in a work setting.[2] (TR 662-66).

The Administrative Law Judge declined to give great weight to Ms. Baldwin's reports and assessment. Citing Social Security Ruling 06-03p, the Law Judge correctly noted that, as a nurse practitioner, Ms. Baldwin is not an acceptable medical source. (TR 178). See also 20 C.F.R. § 416.927(a). The Law Judge determined to give greater weight to the psychological report from Dr. Gardner. (TR 179). In this respect, the court believes that the Law Judge's analysis is somewhat suspect, inasmuch as Ms. Baldwin first saw Mr. Wright several months after Dr. Gardner's examination, and inasmuch as Ms. Baldwin recognized plaintiff's more serious symptoms as of more recent onset. In any event, it seems that Mr. Wright has now required additional mental health treatment, resulting in intervention by a psychiatrist.

As previously noted, in appealing the Law Judge's decision to the Appeals Council, Mr. Wright submitted new medical evidence. It seems that in May of 2013, plaintiff required hospital treatment for symptoms consistent with sigmoid diverticulitis. He eventually came

---

[2] Significantly, Ms. Baldwin indicated that she could not assess plaintiff's condition prior to the time of her first contact with Mr. Wright on May 14, 2012. (TR 665).

6

under the care of Dr. Puneet Gill, an internist. Based on her observations, Dr. Gill referred Mr. Wright to Dr. Dan Harrington, a psychiatrist. After his initial examination on July 11, 2013, Dr. Harrington diagnosed depression, bi-polar affective disorder, and paranoid schizophrenia. However, the psychiatrist's mental status exam was not overly remarkable, and he assessed plaintiff's GAF as 65.[3] (TR 137). On September 17, 2013, Dr. Harrington completed a medical assessment of plaintiff's mental ability for work-related activities. Dr. Harrington's findings as to plaintiff's work-related capacity are similar to those of Ms. Baldwin, in that he noted serious limitations as to most work-related components. The psychiatrist attributed plaintiff's problems to schizoaffective disorder with paranoia, poor judgment, and impulse control issues. (TR 14). Dr. Harrington opined that Mr. Wright is unable to work. (TR 16). The doctor questioned his ability to assess the onset of plaintiff's disability, inasmuch as he had treated Mr. Wright for only two months. (TR 16).

The Appeals Council determined that the new medical evidence did not warrant any change in the Administrative Law Judge's decision, because the reports relate to a "later time." (TR 2). The Appeals Council stated that the new evidence "does not affect the decision about whether [Mr. Wright] was disabled beginning or before March 27, 2013," the date of the Law Judge's decision. (TR 2).

Assuming that the new medical reports submitted by Mr. Wright directly to the Appeals Council are best characterized as new evidence, the court believes that plaintiff has established

---

[3] As previously noted, a GAF score between 61 and 70 represents only mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, with some meaningful interpersonal relationships. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 47 (4th ed. text rev. 2000).

"good cause" for remand of his case to the Commissioner for further consideration on the merits. In Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985), the United States Court of Appeals for the Fourth Circuit summarized the standards under which a motion for remand based on new evidence must be considered:

> A reviewing court may remand a Social Security case to the [Commissioner] on the basis of newly discovered evidence if four prerequisites are met. The evidence must be "relevant to the determination of disability at the time the application was first filed and not merely cumulative." Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983). It must be material to the extent that the [Commissioner's] decision "might reasonably have been different" had the new evidence been before her. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Sims v. Harris, 631 F.2d 26, 28 (4th Cir. 1980). There must be good cause for the claimant's failure to submit the evidence when the claim was before the [Commissioner], 42 U.S.C. § 405(g), and the claimant must present to the remanding court "at least a general showing of the nature" of the new evidence. King, 599 F.2d at 599.

777 F.2d at 955.

In the instant case, the new medical evidence was received by the Appeals Council. Thus, there is no question as to the nature of the evidence. Moreover, given the facts that the new evidence was obviously generated in the course of continuing treatment, and that the reports were forwarded to the Appeals Council, there can be no concern as to any failure to submit the evidence while the claim was before the Commissioner. Without question, Dr. Harrington's reports relate to the same mental health symptoms which were considered by the Law Judge in his opinion.

As to the remaining element in the Borders test, the court believes that there is a somewhat close question as to whether consideration of Dr. Harrington's report might reasonably result in a different administrative disposition in Mr. Wright's case. As previously noted, the psychiatrist questioned his ability to provide an assessment as to plaintiff's condition at a time before the Administrative Law Judge issued his opinion. Moreover, there is no indication as to

8

whether Dr. Harrington believes that Mr. Wright's symptoms are permanent, or whether they might be successfully addressed through appropriate treatment and medication. On the other hand, Dr. Harrington's findings are essentially the same as those of Ms. Baldwin, who saw Mr. Wright prior to the date of the Law Judge's opinion. Once again, the court notes that there is not necessarily an irreconcilable conflict between the reports of Dr. Gardner, Ms. Baldwin, and Dr. Harrington. It seems that there has been some worsening of plaintiff's condition, and that Ms. Baldwin and Dr. Harrington simply saw Mr. Wright at a later point in time. In short, given the current state of the medical record in Mr. Wright's case, it appears that there are unresolved factual questions which should be committed to the administrative fact finder in the first instance. Upon consideration of the Borders factors, the court concludes that plaintiff has established "good cause" for remand of his case to the Commissioner for further and more detailed consideration of the new medical evidence.

The court recognizes that the new submissions by plaintiff might arguably fall in a somewhat different category, inasmuch as the reports were first provided to the Appeals Council, and were actually referenced by the Appeals Council in its denial of plaintiff's request for review. The court notes that the United States Court of Appeals for the Fourth Circuit was presented with a similar procedural scenario in the case of Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011). In that case, the Court made the following comments as to the assessment to be given to evidence submitted to the Appeals Council for its consideration in determining whether to review the opinion of an Administrative Law Judge:

> On consideration of the record as a whole, we simply cannot determine whether substantial evidence supports the ALJ's denial of benefits here. The ALJ emphasized that the record before it lacked "restrictions placed on the claimant by

9

a treating physician," suggesting that this evidentiary gap played a role in its decision. Meyer subsequently obtained this missing evidence from his treating physician. That evidence corroborates the opinion of Dr. Weissglass, which the ALJ had rejected. But other record evidence credited by the ALJ conflicts with the new evidence. The Appeals Council made the new evidence part of the record but summarily denied review of the ALJ decision. Thus, no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance. Therefore, we must remand the case for further fact finding.

662 F.3d at 707.

For the reasons stated, the court finds that the Commissioner's final decision denying plaintiff's application for disability insurance benefits is supported by substantial evidence. Accordingly, the final decision of the Commissioner as regards this application for benefits must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). As to that portion of the case dealing with plaintiff's application for supplemental security income benefits, the court has found "good cause" for remand of the case to the Commissioner for consideration of new medical evidence. Upon remand, if the Commissioner is unable to decide this remaining claim in plaintiff's favor based on the existing record, the Commissioner shall conduct a supplemental administrative hearing at which both sides will be allowed to present additional evidence and argument. An appropriate judgment and order entered this day.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 17th day of July, 2015.

/s/ Glen Conrad

Chief United States District Judge

10